IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH LEE JACKSON, | No. 2:21-CV-1814-KJM-DMC-P |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| SACRAMENTO COUNTY MAIN JAIL, | |
| Defendant. | |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint, ECF No. 15.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. <u>See</u> 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

1 rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege
2 with at least some degree of particularity overt acts by specific defendants which support the
3 claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is
4 impossible for the Court to conduct the screening required by law when the allegations are vague
5 and conclusory.

6 A complaint must contain more than "a formulaic recitation of the elements of a
7 cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the
8 speculative level." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007).  The complaint
9 must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.
10 "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a
11 sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678
12 (2009) (quoting Twombly, 550 U.S. at 556).  The mere possibility of misconduct will not suffice
13 to meet this standard. See id. at 679.

14 "The Supreme Court has instructed the federal courts to liberally construe the
15 inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's
16 complaint] however inartfully pleaded are held to less stringent standards than formal pleadings
17 drafted by lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and
18 internal quotation marks omitted; brackets in original). The rule, however, "applies only to a
19 plaintiff's factual allegations." See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989). "'[A]
20 liberal interpretation of a civil rights complaint may not supply essential elements of the claim
21 that were not initially pled.'" See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th
22 Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

23 In some cases, because pro se litigants often are unfamiliar with legal processes
24 and procedures, district courts in the Ninth Circuit have been willing to construe documents that
25 the litigants mischaracterize or submit using incorrect forms as having been properly named or
26 submitted. See e.g., Cunningham v. Kramer, 178 F. Supp. 3d 999, 1002 (E.D. Cal. 2016)
27 (construing pro se litigant's "first amended complaint" as a motion for reconsideration as opposed
28 to an amended complaint).

## I. PLAINTIFF'S ALLEGATIONS

Here, Plaintiff did not submit his first amended complaint on the Court's standard form for prisoner civil rights cases. See ECF No. 15. Instead, Plaintiff submitted a complaint seeking relief written on a single sheet of plain white paper. See Id. The Court will screen the document as if it was a properly filed amended complaint, given that pro se litigants are held to a less stringent standard in formulating pleadings.

In Plaintiff's submission, Plaintiff names the Sacramento County Jail (Jail) and Sacramento County Jail Chaplain (Chaplain) as the apparent Defendants.[1] See id. According to Plaintiff the Satanic Bible was denied by the Jail and the Chaplain because of passages that encourage violence and hate. Id. Passages include "If a man smite thee on one cheek, smash him on the other" or "If your courtesy is not returned, they should be treated with the wrath they deserve." Id. Plaintiff adds that he hasn't been able to "read, pray, or do [his] conjurations at all." Id.

## II. DISCUSSION

Plaintiff's complaint suffers a number of defects, discussed in more detail below. First, Plaintiff has not alleged a municipal policy or custom such that the Court can conclude the Jail, a municipal entity, can be held liable. Second, while Plaintiff asserts claims against the "Chaplain," that person is not named and, as such, Plaintiff has not alleged a causal link between a named individual and a constitutional violation. Third, as to the substance of his claim, which appears to be based on denial of free exercise of religion, the claim appears foreclosed because, on its face, the institutional has a legitimate penological interest in not allowing inmates to possess materials which advocate violence.

---

[1] Plaintiff alleges facts pertaining to conduct by the Sacramento County Jail Chaplain but attaches documents referencing the Director of Ministries. Plaintiff has not plead facts against the Director of Ministries specifically and, because it is not clear they are one-in-the-same, the Court will not infer them to be. If Plaintiff wishes to bring an action against the Director of Ministries, he must make the appropriate factual allegations and specifically name the Director of Ministries as a Defendant. The Court will not make assumptions as to who Plaintiff is naming as a defendant. Plaintiff does not name the chaplain or any other individuals.

### A. Municipal Liability of the Jail

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See id. To assert municipal liability, therefore, the plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id.

In this instance, Plaintiff names a county institution, the Jail, as a defendant. Plaintiff has not, however, alleged any official policy or custom as the basis for any alleged violation of his civil rights. Plaintiff will be provided an opportunity to amend.

### B. Causal Link to the Chaplain

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

///

///

Here, Plaintiff mentions only the "Chaplain," but does not name that individual. As pleaded, the amended complaint does not provide fair notice as to who specifically is alleged to have violated Plaintiff's rights. As such, Plaintiff has not established a causal link between an individual and a constitutional violation. Plaintiff will be provided an opportunity to amend to identify the Chaplain by name.

### C. Free Exercise Claim

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

///
///
///

        While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

        Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

        It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard.  In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."  518 F.3d 1152, 1157 (9th Cir. 2008); but see

Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four

factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

To show a violation under the First Amendment and RLUIPA standards, Plaintiff bears the first burden of establishing that Defendant substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. Plaintiff has met this initial burden. Plaintiff claims that he has been denied access to a Satanic Bible which is necessary for him to pray and do conjurations. While Plaintiff has not expressly charged that praying is mandated by his faith, the Court finds it reasonable to attribute this activity as one which is fundamental to Plaintiff's faith.

In this case, Plaintiff alleges generally that his rights are being violated because he is not permitted to possess a copy of the Satanic Bible. This claim appears to be foreclosed because the Satanic Bible promotes violence, and the institution has a legitimate penological interest in preventing violence. See McCorkle v. Johnson, 881 F.2d 992, 995-96 (11th Cir. 1989); see also Carpenter v. Wilkinson, 946 F. Supp.522, 529 (N.D. Ohio 1996). Even if the text

were viewed as only symbolically promoting violence instead of actually promoting violence, the result would be the same because symbolic acts of violence also pose a threat to institutional security. See Thornburgh v. Abbott, 490 U.S. 401, 412-13 (1989). While this would appear dispositive of Plaintiff's case, the Court will nonetheless provide Plaintiff a further opportunity to amend given the brevity of the current first amended complaint as well as Plaintiff's pro se status.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named Defendant is involved, and must set forth some affirmative link or connection between each Defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Further, if Plaintiff chooses to amend the complaint, then Plaintiff shall use the proper form or format in which to plead the amended allegations.

///

///

///

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed with leave to amend; and
2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

Dated:  January 27, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE